101 F.3d 1393
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Leoncio Anibal DEL CID, Plaintiff-Appellee-Cross-Appellant,
v.
BELOIT CORPORATION,
Defendant-Third-Party-Plaintiff-Appellant-Cross-Appellee,
Majestic Molded Products Corp., Counter-Claimant.
 Nos. 96-7009, 96-7039.
 United States Court of Appeals,
Second Circuit.
 July 2, 1996.
 
 James M. Kenny, Kenny & Stearns, New York City, for Appellant-Cross-Appellee.
 John V. Mirman, Mineola, NY, for Appellee-Cross-Appellant.
 Present MINER, JACOBS, PARKER, Circuit Judges.
 UPON CONSIDERATION of these appeals from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was argued by counsel.
 Appellant-cross-appellee Beloit Corporation appeals and appellee-cross-appellant Leoncio Anibal Del Cid cross appeals from a judgment of the United States District Court for the Eastern District of New York (Trager, J.), following a bench trial, awarding Del Cid damages, under a theory of strict products liability, for personal injuries in the amount of $360,000.
 
 
 1
 At the time of trial, Del Cid was a 45-year-old Guatemalan citizen who had been living in New York for ten years. Del Cid had been employed at counter-claimant Majestic Molded Products Corp. as a machine operator. In this position, Del Cid was responsible for operating one of Majestic's plastic injection molding machines. The plastic injection molding machine pertinent to this case was manufactured in 1977 by Beloit, a Wisconsin corporation.
 
 
 2
 As part of his job, Del Cid would monitor the molding process, remove the plastic, trim the product, and package the finished products into boxes. In addition to being a machine operator, Del Cid also would perform other tasks at Majestic, such as mold setting, assisting other machine operators, and general maintenance.
 
 
 3
 On June 16, 1992, Del Cid was injured severely when his leg was crushed in a plastic injection molding machine while the machine was in operation. The accident occurred when Del Cid was attempting to reposition a chain hoist which had become entangled with an air filter located on the oil reservoir located on the top of the machine. Del Cid first tried to free the hoist by shaking the hand chain while standing on the floor of the factory. When this failed, Del Cid climbed onto the machine operator's table, and again tried to free the hoist by shaking the hand chain. Again Del Cid failed. He then climbed onto the machine. Del Cid then placed both feet on a two-inch-wide angle bracket in order to reach higher. Standing on the angle brackets and looking up at the air filter, Del Cid attempted to free the hoist with both hands. While doing so, his right foot slipped off the angle brackets and came to rest on a tie rod, which is a metal rod that connects the two halves of the machine. At this time, the machine was cycling and the mechanical stop bar crushed Del Cid's right leg.
 
 
 4
 As a result of his injury, Del Cid's leg was amputated. He was fitted with a cosmetic prosthesis, and eventually fitted with a functional prosthesis. Del Cid claims that, because of the prothesis, he experiences pain in his back and right leg. It is expected that he will need a new prothesis every three to five years, and, at the time of trial, Del Cid was seeing a chiropractor three times a week to alleviate his leg and back pain.
 
 
 5
 In September of 1992, Del Cid commenced an action in district court against Beloit, seeking to recover damages for his injuries. According to Del Cid, the injuries were proximately caused by a design defect in the plastic injection molding machine. Del Cid claimed that the molding machine was defectively designed because there was no device to guard the "pinch point" on the top of the machine. Beloit, on the other hand, argued that it complied with all applicable industry safety standards for the guarding of pinch points on plastic injection molding machines and therefore was not defectively designed. Furthermore, Beloit claimed that Del Cid's injuries were proximately caused by his own negligence when he climbed on top of the machine to reposition the hoist.
 
 
 6
 Following a bench trial, the district court concluded that the plastic molding machine was defectively designed because it failed to provide a guard for the top pinch point. The district court also determined that, because Del Cid himself acted negligently by climbing on top of the machine, his damages should be reduced by ten percent. This appeal followed.
 
 
 7
 On appeal, Beloit argues, inter alia, that the district court had no factual basis from which to conclude that it was reasonably foreseeable to Beloit that a person might be in the vicinity of the pinch point on top of the molding machine while it was operating. We think that the record indicates otherwise.
 
 
 8
 Under New York law, a plaintiff may recover damages for injuries sustained as a result of a design defect where "the product 'was not reasonably safe and ... the defective design was a substantial factor in causing [the] injury.' " Parsons v. Honeywell, Inc., 929 F.2d 901, 905 (2d Cir.1991) (citation omitted). Furthermore, the New York Court of Appeals has held that "a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use." Micallef v. Miehle Co., 384 N.Y.S.2d 115, 121 (1976) (citations omitted). "[F]oreseeability includes the probability of the occurrence of a general type of risk involving the loss, rather than the probability of the occurrence of the precise chain of events preceding the loss." Tucci v. Bossert, 385 N.Y.S.2d 328, 331 (2d Dep't 1976) (citations omitted).
 
 
 9
 "The factual findings of the district court--whether based on oral or documentary evidence--are ... subject to the clearly erroneous standard of review." Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1176 (2d Cir.1995), cert. denied, 116 S.Ct. 1351 (1996). "A factual finding is not clearly erroneous unless we are 'left with the definite and firm conviction that a mistake has been committed.' " Id. (citation omitted).
 
 
 10
 In making its foreseeability finding, the district court found that "[t]he evidence adduced at trial showed that there were normal situations in which workers would be exposed to the unguarded pinch point on the top of the machine, even while the machine would be turned on." Relying on Del Cid's expert witness' testimony, the district court found that preventive maintenance procedures, such as checking the oil level in the reservoir and checking for leaks in the hydraulic system, would require an individual to work in close proximity to the unguarded area at the top of the machine. While the district court noted that these procedures "should be performed with the use of a ladder," the court added that "it is not unforeseeable that while so doing an employee could slip off the ladder and fall into the unguarded area on top of the machine."
 
 
 11
 Beloit argues that Del Cid's expert witness' testimony was factually erroneous and that the district court should have relied on the testimony of its witness, James Hermanski, who testified that all maintenance of the molding machine could be accomplished by a "walk around the machine." However, the district court was well within its authority, as a fact finder, to credit the testimony of Del Cid's expert witness over Hermanski. See Village of Swanton v. 18.9 Acres of Land, 49 F.3d 893, 894 (2d Cir.1995). Because we cannot say that the district court's factual finding leaves us with a definite and firm conviction that a mistake has been committed, we hold that the district court's decision was not clearly erroneous.
 
 
 12
 Del Cid cross appeals, claiming that the district court's $150,000 award for pain and suffering was "grossly and palpably inadequate." However, because of their "inherently speculative" nature, In re United States Steel Corp., 479 F.2d 489, 501 (6th Cir.), cert. denied, 414 U.S. 859 (1973), we are "particularly slow to interfere with any award for suffering," United States Fidelity & Guaranty Co. v. United States, 152 F.2d 46, 49 (2d Cir.1945). In the present case, Del Cid cannot demonstrate that the district court's pain and suffering award was "grossly and palpably inadequate" and accordingly we affirm the district court's award.